Gary D. PENNINGTON, Petitioner—
Appellant,

v.

William RAINS; James Gomez,
Respondents—Appellees.

No. 03–16272.
D.C. No. CV 96–0262 DFL.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 2004.

Decided July 20, 2004.

Timothy J. Foley, San Francisco, CA, for Petitioner-Appellant.

Judy Kaida, Deputy Atty. Gen., Sacramento, CA, for Respondent-Appellee.

Before THOMPSON, TASHIMA, and RAWLINSON, Circuit Judges.

## MEMORANDUM *

State prisoner Gary Pennington appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition challenging his convictions for robbery, false imprisonment, assault with a firearm, and being a probationer in possession of a firearm. He contends that the trial court violated his Sixth Amendment right to confront adverse witnesses when it admitted incriminating hearsay statements of his non-testifying codefendant at their joint trial. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The district court agreed that the admission of the challenged hearsay statements was error, but it denied relief on the ground that the error was harmless.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We review the district court's decision to deny a petition for a writ of habeas corpus *de novo. Clark v. Murphy,* 331 F.3d 1062, 1067 (9th Cir.), *cert. denied,* — U.S. —, 124 S.Ct. 446, 157 L.Ed.2d 313 (2003). Because Pennington filed his petition prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132 ("AEDPA"), pre-AEDPA standards apply. *See Lindh v. Murphy,* 521 U.S. 320, 322–23, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Jeffries v. Wood,* 114 F.3d 1484, 1499 (9th Cir.1997) (en banc). We agree with the district court's conclusion that admission of the unconfronted hearsay statements was error under *Bruton.* We also agree that the error was harmless with respect to Pennington's convictions for robbery and false imprison-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ment. We disagree, however, that the error was harmless with respect to Pennington's firearms convictions. Accordingly, we affirm in part, reverse in part, and remand.

## I

The challenged testimony in this case consisted of the hearsay statements of Pennington's co-defendant, Chris Cottrell. Prior to trial, Cottrell confessed to his involvement in the robbery to his friend, Anthony Ketelsen. During the course of that conversation, Cottrell admitted, among other things (1) that shop owner Gary Mello was handcuffed during the robbery, and (2) that when the police arrived, he (Cottrell) put "some guns" in a drawer in Mello's office. The prosecution called Ketelsen to recount the contents of the conversation.

In order to prevent the admission of unconfronted hearsay testimony against Pennington, the trial judge had ordered attorneys on both sides to instruct their witnesses to redact all references to the existence of another participant in the robbery when recounting Cottrell's hearsay statements. *See Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) ("[T]he Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."). That approach failed, however, when Ketelsen repeatedly used plural pronouns, such as "they," in his testimony recounting Cottrell's description of the robbery. Cottrell's attorney exacerbated the problem when he explicitly referred to "another person" in his questioning of Ketelsen. The trial court ordered the questions that referred to "another person" stricken, but it did not strike

the portions of Ketelsen's testimony that used plural pronouns. Further, the jury was not given a limiting instruction not to consider Cottrell's statements against Pennington. The State concedes that the admission of Cottrell's unconfronted hearsay statements violated Pennington's Sixth Amendment rights under *Bruton.* Thus, the only question before us is whether the error was harmless.

## II

A trial error is not grounds for granting a habeas petition unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). In order to prevail, a habeas petitioner must show that the error of which he complains resulted in "actual prejudice." *Id.* The petitioner need not establish that the verdict would have been different but for the error. *Kotteakos,* 328 U.S. at 765 ("The inquiry cannot be merely whether there was enough to support the result, apart from the phase that affected the error. It is rather, even so, whether the error itself had substantial influence."). If we are in "grave doubt" about whether the error was harmless, we must resolve that doubt in favor of the petitioner. *O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

■ With respect to the robbery and false imprisonment charges, the physical evidence found at the scene of the crime strongly supports Pennington's convictions. In the back of Cottrell's pickup truck, which was parked outside, Sheriff's officers found materials taken from the shop, including motorcycle parts, a speaker cabinet, a pair of binoculars, an electronic device of some kind, and several

bags of fertilizer. In the cab of Cottrell's truck they found a tupperware container containing the syringes and spoons Mello used for preparing and injecting methamphetamine, Mello's wallet and pager, and a set of handcuffs. On the front seat they found a small leather bag belonging to Pennington, inside of which were several speed-loaders, at least one of which matched a handgun found in Mello's office. Pennington had the keys to Mello's shop in his pocket. Inside the shop, officers found another pair of handcuffs with a length of rope attached.[1]

Pennington argues that the evidence is consistent with his argument that Mello voluntarily gave his things to Cottrell in order to satisfy a debt. But even if we were to accept that explanation with respect to the motorcycle parts, fertilizer, and other items found in the back of Cottrell's truck, it is implausible that Mello would volunteer his wallet and pager in order to satisfy a debt. Moreover, the fact that handcuffs were found, both in the truck and inside the store, undermines Pennington's testimony that Mello offered the items willingly. Therefore, we conclude that the Cottrell's statements did not have a "substantial and injurious effect" on the jury's decision to convict for robbery. See Brecht, 507 U.S. at 637.

With respect to the false imprisonment charge, the presence of the handcuffs found on the floor of Mello's shop with a length of rope attached provides "overwhelming" evidence in support of the conviction. See Christian v. Rhode, 41 F.3d 461, 468 (9th Cir.1994). Pennington explains the handcuffs found in the store by suggesting that they were part of the in-ventory for sale. But even assuming handcuffs were offered for sale in Mello's motorcycle parts and gardening shop, and even assuming they were in stock at the time of the robbery, the fact that the handcuffs were found in precisely the area in which Mello claimed to have been detained and the fact that a length of rope was attached to them strongly suggests that Mello was handcuffed and tied up. Therefore, the impact of Cottrell's statements was not so substantial as to require reversal of the false imprisonment conviction either. See Brecht, 507 U.S. at 637.

█ On the other hand, the evidence tending to show that Pennington was armed during the robbery was marginal. Sheriff's officers found three handguns in a desk drawer in Mello's office, but apart from Cottrell's hearsay admission that he put "some guns" in a drawer in Mello's office, there is no reliable evidence linking either Cottrell or Pennington to the guns. Mello testified that Pennington was armed, and that he had never before seen the guns found in his drawer, but, as noted, his credibility was thoroughly impeached at trial. Pennington testified that the guns in the drawer belonged to Mello and that Mello offered to sell one of them to him. If the jury believed Ketelsen's testimony that Cottrell put guns in the drawer, then it may have been more likely to believe Mello's testimony that Pennington was armed. See Whelchel v. Washington, 232 F.3d 1197, 1207–8 (9th Cir.2000) (holding that the trial court's erroneous admission of the un-confronted admission of a co-defendant was prejudicial where the physical evidence linking the testifying defendant to the crime was "scant" and the un-

---

1. Although Shop owner Gary Mello's testimony also supports Pennington's guilt on both the robbery and false imprisonment charges, his testimony was thoroughly impeached at trial and it is entitled to little weight. The testimony of Mello's mechanic Marino Frigoli is more credible than that of Mello, but less revealing. He never identified Pennington as being present at the robbery and he did not testify as to what transpired inside the motorcycle shop.

confronted admission corroborated the otherwise unreliable testimony of trial witnesses). Absent Ketelsen's testimony, however, the jury would have been much more likely to credit Pennington's testimony that the guns in the drawer belonged to Mello.

The remaining evidence tending to show that Pennington was armed was weak and circumstantial. Frugoli testified that only Cottrell was armed, not Pennington. And as for the Colt .45 handgun found in Cottrell's truck, there is no evidence that the gun belonged to Pennington and no indication that it was used in the robbery.[2] We conclude, therefore, that Cottrell's unconfronted, hearsay admission that he put "some guns" in a drawer in Mello's office likely had a "substantial" influence on the jury's decision to convict Pennington of the firearms charges. *See Brecht,* 507 U.S. at 637. At a minimum, we find ourselves in "grave doubt" as to whether it did. *See O'Neal,* 513 U.S. at 436.

### III

For the foregoing reasons, we affirm the district court's denial of Pennington's petition with respect to his convictions for robbery and false imprisonment, but reverse the denial of his petition with respect to his convictions for assault with a firearm and being a probationer in possession of a firearm, and remand with instructions to issue a conditional writ of habeas corpus as to those counts consistent with this disposition.

**AFFIRMED in part, REVERSED and REMANDED in part.**

---

**2.** In fact, both Pennington and Cottrell (through his hearsay statements) indicated that the .45 was taken from Mello's shop.

